NOT FOR PUBLICATION

<h2 style="text-align:center">UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY</h2>

_____

IVAN G. MCKINNEY,                :

             Plaintiff,       :

       v.                        :

PASSAIC COUNTY PROSECUTOR'S   :
OFFICE, et al.,                  :

             Defendants.       :
_____ :

Civil Action No. 08-3149 (PGS)

OPINION

**Sheridan**, District Judge:

Plaintiff Ivan McKinney ("Plaintiff"), a prisoner currently confined at the Southwoods State Prison, Bridgeton, New Jersey, seeks to bring this 42 U.S.C. § 1983 action _in_ _forma_ _pauperis_, without prepayment of fees, pursuant to 28 U.S.C. § 1915(a). Plaintiff submitted for filing his complaint ("Complaint") and, following the Court's order directing submission of Plaintiff's filing fee or an application to proceed _in_ _forma_ _pauperis_, submitted his complete _in_ _forma_ _pauperis_ application. This Court shall grant Plaintiff _in_ _forma_ _pauperis_ status and will direct the Clerk to file Plaintiff's Complaint. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

### BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he is about to be convicted by the Superior Court of New Jersey, Law Division, Passaic County, for various crimes, which apparently include a count of sexual assault. See Compl. at 4.   Plaintiff further asserts that, if he is convicted, such conviction would be wrongful, since the facts of his criminal case suggest that Plaintiff is not guilty of the charges.  Plaintiff points out the following facts: (1) the victim was, allegedly, consuming alcohol in the morning of the date of the assault; (2) the victim was, allegedly, sexually assaulted by three other men on the same day; (3) the victim, allegedly, made an initial identified of the perpetrator as a "Hispanic male," while Plaintiff is an African-American; (4) the victim, allegedly, made her later identified of the perpetrator as an African-American male, who was her 22-year-old school teacher, while Plaintiff was never a school teacher and is 33 years old; (5) the DNA test conducted upon request of the prosecutor, who originally handled

2

Plaintiff's action, indicated that Plaintiff was not a contributor to the sperm sample taken from the victim's body; and (6) Plaintiff was arrested as a result of the search executed on the basis of an allegedly improperly obtained warrant, since the warrant was unsigned, and Plaintiff believes that it was obtained as a result of false testimony by a police officer. See Docket Entry No. 1-1, at 4; Docket Entry No. 1-2, at 1-12.

Plaintiff names the following parties as Defendants in this action: (1) Janet Russel ("Russel"), a nurse at Beth Israel Hospital, who examined the victim after the assault; (2) prosecutor Steven Brizek ("Brizek"), who initially handled Plaintiff's criminal prosecution; (3) prosecutor Ilene Kane ("Kane"), to whom Plaintiff's criminal prosecution was reassigned upon Brizek assignment to other matters; (4) prosecutor Peter Roby ("Roby"), who represented the State of New Jersey during Plaintiff's indictment; (5) prosecutor James Avigliano ("Avigliano"), who supervises the Passaic County Prosecutor's Office;  (6) Tabetha Primo ("Primo"), who is employed as an investigator by the Passaic County Prosecutor's Office; (7) the Passaic County Prosecutor's Office itself ("Prosecutor's Office"); and (8) Beth Israel Hospital ("Hospital"). See Docket Entry No. 1-2, at 1-11.

According to Plaintiff, Russel violated his rights by negligently executing a letter containing her opinion that the victim's intoxication was of no relevance to the events surrounding

3

assault because of the time span between the intoxication and the assault. See id. at 1. Plaintiff asserts that, had Russel were not negligent in her analysis, Plaintiff would have been exonerated. See id. In addition, Plaintiff maintains that the Hospital is liable to Plaintiff because Russel is employed at the Hospital. See id. at 11.

With respect to Brizek, Plaintiff alleges that Brizek violated Plaintiff's rights because Brizek continued prosecuting Petitioner's case, even though: (a) there was no victim's intoxication report; (b) Brizek insisted upon collecting Plaintiff's DNA sample in order to determine whether Plaintiff was one of the perpetrators but did not insist on releasing Plaintiff when the DNA test showed that Plaintiff was not one of the sperm contributors; © was aware about the discrepancies in the victim's statements (as well as discrepancies between the facts provided by the victim and Plaintiff's data) but did not interpret these discrepancies in favor of Plaintiff; and (d) was aware of the shortcomings of the arrest warrant but did not use this information in order to cease Plaintiff's prosecution. As to Kane, Plaintiff asserts that she violated Plaintiff's rights by: (a) continuing Plaintiff's prosecution after Brizek left the case, even though she was, allegedly, aware of all shortcomings in the prosecution's case; (b) unduly delaying production of evidence that might be useful to Plaintiff's defense counsel; and © practicing her speech,

4

which Plaintiff understood to be her anticipated opening statement, in front of Plaintiff and in the presence of Plaintiff's parents, causing Plaintiff to interpret the speech as a tactic intended to scare Plaintiff into taking a plea. See id. at 4-5.

With respect to Roby, Plaintiff maintains that Roby violated Plaintiff's rights by omitting evidence, which Plaintiff interprets as exculpatory, from Roby's grand jury presentation. See id. at 6. Similarly, with respect to Primo, Plaintiff asserts that she violated his rights by not disclosing the inconsistencies of prosecutorial case to Plaintiff's defense counsel and by not insisting on prosecutor's release of forensic evidence (which Defendant interprets as exculpatory) to Defendant's attorney. See id. at 8. Finally, Plaintiff alleges that Avigliano is liable to Plaintiff for supervising Brizek, Kane, Roby and Primo, and the Prosecutor's Office is liable for employing all of them. See id. at 7, 10.

Plaintiff seeks to have his criminal prosecution stopped and his immediate release. See Docket Entry No. 1-1, at 5. In addition, he seeks damages in the amount of $5,800,000, as well as suspension of licenses of all Defendants, plus Plaintiff's attorney's fees (presumably, incurred as a result of his criminal proceedings since Plaintiff proceeds in the instant matter pro se). See id. Plaintiff asserts that the aforesaid parties are liable to him for maliciously prosecuting him and by causing him "false

arrest" in the sense that Plaintiff, being unable to make bail, is being held in confinement while awaiting for his criminal trial.

## DISCUSSION

### A. Standard of Review

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants. In determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable

to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). This Court need not, however, lend credit to a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions." <u>Id.</u> The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals guided as follows:

> "While a complaint . . . does not need detailed factual
> allegations, a plaintiff's [Rule 8] obligation [is] to
> provide the 'grounds' of his 'entitle[ment] to relief'
> requires [by stating] more than labels and conclusions,
> and a formulaic recitation of the elements of a cause of
> action . . . ." [<u>Bell Atl. Corp. v.</u>] <u>Twombly</u>, 127 S. Ct.
> [195,] 1964-65 [(2007)]. Rule 8 "requires a 'showing,'
> rather than a blanket assertion, of entitlement to
> relief." <u>Id.</u> at 1965 n.3. . . . [In fact,] the Supreme
> Court [expressly] disavowed certain language that it had
> used many times before -- the "no set of facts" language
> from [a pre-<u>Twombly</u> case]. <u>See</u> <u>id.</u> at 1968.

<u>Phillips</u>, 515 F.3d at 230-32  (original brackets removed).

## B. <u>Claims Against the Prosecutor's Office and Prosecutors Brizek, Kane and Roby</u>

Plaintiff's allegations against the Prosecutor's Office are not cognizable, since this Defendant is not a "person" subject to suit under 42 U.S.C. § 1983. <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989); <u>Monell v. Dep't of Social Services of City of New York</u>, 436 U.S. 658, 688-90 (1978); <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989); <u>Martin v. Red Lion</u>

Police Dep't, 146 F. App'x, 558, 562 n.3 (3d Cir. 2005); see also
Johnson v. Runyon, 1999 U.S. Dist. LEXIS 5748 (W.D. Mich. Apr. 22,
1999). Therefore, Plaintiff's claims against this non-person will
be dismissed, with prejudice, for failure to state a claim upon
which relief may be granted.

In addition, Plaintiff's allegations against Brizek, Kane and
Roby appear to be barred by immunity of these persons from a § 1983
suit.

> More than a mere defense to liability, prosecutorial
> immunity embodies the "right not to stand trial," [In
> re] Montgomery County, 215 F.3d [367,] 373 [(3d Cir.
> 2000)] (citing Mitchell v. Forsyth, 472 U.S. 511, 525
> (1985)) . . . . [However, a] prosecutor bears the
> "heavy burden" of establishing entitlement to absolute
> immunity. Light v. Haws, 472 F.3d 74, 80-81 (3d Cir.
> 2007) (quoting Forsyth v. Kleindienst, 599 F.2d 1203,
> 1212 (3d Cir. 1979)). . . . [A] prosecutor must show
> that he or she was functioning as the state's advocate
> when performing the action(s) in question. Yarris[ v.
> County of Delaware], 465 F.3d [129,] 136 [(3d Cir.
> 2006).] This inquiry focuses on "the nature of the
> function performed, not the identity of the actor who
> performed it." Light, 472 F.3d at 78 (quoting Hughes
> v. Long, 242 F.3d 121, 125 (3d Cir. 2001)). Under this
> functional approach, a prosecutor enjoys absolute
> immunity for actions performed in a judicial or
> "quasi-judicial" capacity. Giuffre, 31 F.3d at 1251
> (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976));
> Rose v. Bartle, 871 F.2d 331, 346 (3d Cir. 1989).
> Thus, immunity attaches to actions "intimately
> associated with the judicial phases of litigation," but
> not to administrative or investigatory actions
> unrelated to initiating and conducting judicial
> proceedings. Giuffre, 31 F.3d at 1251 (quoting Imbler,
> 424 U.S. at 430) (internal quotation omitted); see also
> Rose, 871 F.2d at 346 (contrasting the prosecutor's
> "quasi-judicial" role from his "administrative/
> investigative" role). . . . [W]here a prosecutor's role
> as advocate has not yet begun, or where it has
> concluded, absolute immunity does not attach.

> [Yarris,]465 F.3d at 137 (quoting <u>Spurlock v. Thompson</u>,
> 330 F.3d 791, 799 (6th Cir. 2003)). [If the court can]
> not discern from [the] complaint "whether the [improper
> actions] occurred during the preliminary investigation
> of an unsolved crime" or "after the [prosecutors]
> decided to indict [the plaintiff] and had begun working
> as the state's advocates," [the court should] decline[]
> to extend absolute immunity to this act. Id. at 138-39.

<u>Odd v. Malone</u>, 2008 U.S. App. LEXIS 16466, at *8-19 (3d Cir. Aug. 4, 2008). While Plaintiff's Complaint seems to suggest that the activities of Brizek took place after the decision to indict Plaintiff was reached (and it appears certain that the activities of Roby and Kane took place after the decision to indict Plaintiff was made), the information that can be gathered from the face of the Complaint does not necessarily rule out the possibility that certain actions performed by Brizek would not fall under the protection of absolute immunity. Therefore, Plaintiff's claims against Roby and Kane will be dismissed with prejudice, while his allegations against Brizek will not.

## C.  *Respondeat Superior* Claims and Negligence Claims

Supervisors are not liable under § 1983 solely on a theory of <u>respondeat superior</u>. <u>See</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell</u>, 436 U.S. at 690-91, 694 (1978); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat</u> <u>superior</u>.

Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997). Therefore, where a plaintiff seeks to establish liability based on a supervisor's failure to train or supervise adequately, the plaintiff must allege and show that a need for more or different training or supervision is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train or supervise can fairly be said to represent official policy. See City of Canton v. Harris, 489 U.S. 378, 388-92 (1989); Stoneking v. Bradford Area School Dist., 882 F.2d 720, 724-26 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990). In the same vein, an entity, "cannot be held liable solely because it employs a tortfeasor." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978); see also City of Canton, 489 U.S. at 388-92. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Berg v. County of

<u>Allegheny</u>, 219 F.3d 261, 275 (3d Cir. 2000) (quoting <u>Pembaur v.</u> <u>City of Cincinnati</u>, 475 U.S. 469, 481 (1986)).

Here, Plaintiff does not allege any fact suggesting that either Avigliano or the Hospital coined and/or implemented any policy that might have resulted in violation of Plaintiff's constitutional rights. <u>See</u> <u>generally</u>, Compl.  Rather, Plaintiff bases his allegations solely on Avigliano's supervisory status and the Hospital status as Russel's employer. However, such allegations cannot be used as a substitute for a factual allegation. <u>See</u> <u>Phillips</u>, 515 F.3d at 230-32.  Therefore, Plaintiff's allegations against Avigliano and the Hospital will be dismissed without prejudice. <u>See</u> <u>Monell</u>, 436 U.S. at 691, 694.

Moreover, Plaintiff's claims against Russel are not cognizable in a § 1983 action, since Plaintiff asserts that she was acting with mere negligence. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994) (negligent claims, while cognizable in a state tort action, cannot serve as a basis for a § 1983 claim); <u>Davidson v. Cannon</u>, 474 U.S. 344 (1986) (same); <u>Daniels v. Williams</u>, 474 U.S. 327 (1986) (same); <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976) (same).  Hence, Plaintiff's claims against Russel will be dismissed with prejudice.

Consequently, the foregoing discussion leaves only one Defendant in this action: Defendant Primo.  However, as the discussion set forth below illustrates, Plaintiff's claims against Primo, same as his claims against all named Defendants, are also

11

subject to dismissal without prejudice, since Plaintiff's claims asserting malicious prosecution are premature, while his demand for immediate release is not cognizable under 42 U.S.C. § 1983.

**D.   Malicious Prosecution Claim**

Malicious prosecution claims may be grounded in conduct that "violates the Fourth Amendment, the procedural due process clause or other explicit text of the Constitution." Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir. 1998).  In order to state a prima facie case for a § 1983 claim of malicious prosecution pursuant to the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed over time, Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996), and that there has been a seizure, Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998); Luthe v. Cape May, 49 F. Supp. 2d 380, 393 (D.N.J. 1999).  Under New Jersey law, the common law tort elements of a malicious prosecution action arising out of a criminal prosecution are: (1) the criminal action was instituted by the defendant against the plaintiff, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff. See Lind v. Schmid, 67 N.J. 255, 262 (1975).

Ordinarily, the statute of limitations on a malicious prosecution claim begins to run on the date plaintiff receives a favorable termination of the prior criminal proceeding. See Heck

12

v. Humphrey, 512 U.S. 477, 489 (1994). Here, the Complaint makes it clear that Plaintiff's criminal proceedings were underway at the time of submission of his Complaint and, it appears, the criminal action is still in process. Thus, Plaintiff has failed to allege a favorable termination of the criminal proceeding. Accordingly, any malicious prosecution claims against all Defendants has not yet accrued and will be dismissed without prejudice.

**E.    Abstention Bar and Request for Immediate Release**

The exclusive federal remedy for an inmate challenging the fact of his confinement is a petition for a writ of habeas corpus which requires the exhaustion of state court remedies. See Preiser v. Rodriguez, 411 U.S. 475 (1973). "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Preiser, 411 U.S. at 500; see also Wolff v. McDonnell, 418 U.S. 539, 554 (1974); Brown v. Fauver, 819 F.2d 395 (3d Cir. 1987).[1]

---

[1] In Heck, the Supreme Court held that an action under § 1983 seeking damages for allegedly unconstitutional conviction or incarceration is not cognizable under § 1983 unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486-87. Thus, to the extent that Plaintiff seeks monetary and injunctive relief other than release, his claims have not accrued because a favorable judgment would necessarily imply the invalidity of his future conviction. See id. Where

13

Moreover, Plaintiff's application is currently barred by the abstention doctrine. The doctrine of abstention which has developed since <u>Younger v. Harris</u>, 401 U.S. 37 (1971) "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431 (1982). "Younger abstention," as the Court's teaching is known, "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." <u>Evans v. Court of Common Pleas, Delaware County, Pa.</u>, 959 F.2d 1227, 1234 (3d Cir. 1992), <u>cert. dismissed</u>, 506 U.S. 1089 (1993). Comity concerns are especially heightened when the ongoing state governmental function is a criminal proceeding. <u>See id.</u>

The specific elements of the <u>Younger</u> abstention are that: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise

───────────────────

success in a plaintiff's § 1983 damages action would implicitly question the validity of confinement, the plaintiff must first achieve favorable termination of his available state, or federal habeas, opportunities in order to obtain relief under § 1983 the underlying decision to confine him. <u>See</u> <u>Muhammad v. Close</u>, 540 U.S. 749, 751 (2004). Because federal habeas petitions may not be granted unless available state court remedies have been exhausted, <u>see</u> 28 U.S.C. § 2254(b)(1)(A), "conditioning the right to bring a § 1983 action on a favorable result in state litigation or federal habeas serve[s] the practical objective of preserving limitations on the availability of habeas remedies." <u>Id.</u>

14

federal claims." <u>Schall v. Joyce</u>, 885 F.2d 101, 106 (3d Cir. 1989). All three <u>Younger</u> criteria are met in the case at hand. First, Plaintiff's claims concern an ongoing criminal prosecution. Second, these criminal proceedings clearly implicate important state interests. Third, the forums of the states of New Jersey and New York afford Plaintiff an adequate opportunity to raise his federal law issues. Therefore, Plaintiff's claims are currently barred by the doctrine of abstention.[2]

## F.   Wrongful Arrest Claim

Finally, Plaintiff's Complaint appears to suggest that Plaintiff was arrested and imprisoned without probable cause, <u>i.e.</u>, pursuant to an improperly obtained warrant. However, it appears self-evident that Plaintiff was not arrested by any of the named Defendants, <u>i.e.</u>, by the prosecutors, or the nurse, or the investigator, or by their employers. Therefore, the Court will allow Plaintiff an opportunity to file an amended complaint naming those entities who allegedly executed his wrongful arrest and stating, *concisely*, the facts supporting Plaintiff's allegations.

---

[2] Plaintiff has not asserted that he is unable to present his federal claims in his related state proceedings. Thus, this Court may assume that the state procedures will afford an adequate remedy. <u>See</u> <u>Kelm v. Hyatt</u>, 44 F.3d 415, 420 (6th Cir. 1995) (citing <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 17, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987), for the proposition that, "[i]nitially, we must presume that the state courts are able to protect the interests of the federal plaintiff").

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. <u>See Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988). To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." <u>Lind v. Schmid</u>, 67 N.J. 255, 262 (1975). "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975) (quoting <u>Beck v. State of Ohio</u>, 379 U.S. 89, 91 (1964)).

"[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest," for the period of incarceration lasting from arrest until the first legal action, e.g., an arraignment. <u>Groman v. Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995). Indeed, the Supreme Court of the United States recently noted that, "[f]alse arrest and false imprisonment

16

overlap; the former is a species of the latter." <u>Wallace v. Kato</u>, 127 S. Ct. 1091, 1095 (2007). Plaintiff, thus, will be allowed an opportunity to re-state his claims as to his incarceration during this period of time, that is, provided that he has a <u>bona</u> <u>fide</u> reason to believe that his arrest was executed falsely.

<u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's application to proceed in this matter <u>in</u> <u>forma</u> <u>pauperis</u> will be granted.

Plaintiff's allegations against Defendants Prosecutor's Office, Roby, Kane and Russel will be dismissed with prejudice.

Plaintiff's allegations against all other named Defendants will be dismissed without prejudice, either for failure to state a claim upon which relief can be granted or as premature, or on both grounds.

Plaintiff will be allowed an opportunity to file an amended complaint re-stating his wrongful arrest allegations, detailing the facts supporting his claim and naming defendants whom Plaintiff believes to be liable for such wrongful arrest.

An appropriate Order accompanies this Opinion.



_____
PETER G. SHERIDAN
United States District Judge


Dated:     9/3/08

17