**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IVAN G. MCKINNEY, | : | Civil Action No. 08-3149 (PGS) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| PASSAIC COUNTY PROSECUTOR'S OFFICE, et al., | : | |
| Defendants. | : | |

**Sheridan**, District Judge:

Plaintiff Ivan McKinney ("Plaintiff"), a prisoner currently confined at the Southwoods State Prison, Bridgeton, New Jersey, brought this 42 U.S.C. § 1983 action in forma pauperis, without prepayment of fees, pursuant to 28 U.S.C. § 1915(a). On June 20, 2008 the Clerk received Plaintiff's civil complaint ("Complaint") and, following the Court's order directing submission of Plaintiff's filing fee or an application to proceed in forma pauperis, Plaintiff submitted his complete in forma pauperis application. See Docket Entries Nos. 1-3. On September 3, 2008, this Court issued an opinion discussing Plaintiff's claims in great detail and an accompanying order dismissing certain Plaintiff's claims with prejudice and others without prejudice, and granting Plaintiff an opportunity to file an amended complaint. See Docket Entries Nos. 5-6. On September 29, Plaintiff submitted his amended

complaint.  See Docket Entry No. 8.  The Court, therefore, will now
screen the amended complaint in order to determine whether it
should be dismissed as frivolous or malicious, for failure to state
a claim upon which relief may be granted, or because it seeks
monetary relief from a defendant who is immune from such relief.

**I.   BACKGROUND**

**A.   Original Complaint**

In his original complaint ("Complaint"), Plaintiff alleged
that he was about to be convicted by the Superior Court of New
Jersey, Law Division, Passaic County, for various crimes (which
included a sexual assault), and asserted that, if he is convicted,
such conviction would be wrongful because Plaintiff was not guilty
of the charges.  The Complaint named the following parties as
Defendants in the instant action: (1) Janet Russel ("Russel"), a
nurse at Beth Israel Hospital, who examined the victim after the
assault; (2) prosecutor Steven Brizek ("Brizek"), who initially
handled Plaintiff's criminal prosecution; (3) prosecutor Ilene Kane
("Kane"), to whom Plaintiff's criminal prosecution was reassigned
upon Brizek assignment to other matters; (4) prosecutor Peter Roby
("Roby"), who represented the State of New Jersey during
Plaintiff's indictment; (5) prosecutor James Avigliano
("Avigliano"), who supervised the Passaic County Prosecutor's
Office; (6) Tabetha Primo ("Primo"), who was employed as an
investigator by the Passaic County Prosecutor's Office; (7) the

2

Passaic County Prosecutor's Office itself ("Prosecutor's Office"); and (8) Beth Israel Hospital ("Hospital"). <u>See</u> Docket Entry No. 1-2, at 1-11.

The Court dismissed the Complaint explaining to Plaintiff the following: (1) Plaintiff's allegations against the Prosecutor's Office were not cognizable, since this Defendant was not a "person" subject to suit under 42 U.S.C. § 1983; (2) Plaintiff's allegations against Kane and Roby were barred by immunity of these persons from a § 1983 suit, but -- due to ambiguities of Plaintiff's allegations against Brizek -- it appeared that Plaintiff might be able to articulate a claim against Brizek in his amended complaint in the event he wished to challenge Brizek's activities that took place prior to Brizek's decision to indict Plaintiff; (3)  Plaintiff's claims against Avigliano and the Hospital were insufficient since they appeared to be based solely on the theory of <u>respondeat superior</u>, but Plaintiff could amend his complaint to challenge the actions of these entities if Plaintiff had basis to allege these entities' personal involvement in the wrongs allegedly suffered by Plaintiff; (4) Plaintiff's claims against Russel were not cognizable in a § 1983 action, since Plaintiff asserted that Russel was acting with mere negligence; (5) Plaintiff's malicious prosecution claim against Primo was premature; (6) Plaintiff could not seek release from imprisonment in a § 1983 action, since the exclusive federal remedy for an inmate challenging the fact of his

3

confinement was a petition for a writ of habeas corpus; (7) Plaintiff's challenges to his ongoing criminal prosecution were barred by the abstention doctrine; and (8) Plaintiff's false arrest and false imprisonment claims could not be entertained since the Complaint failed to name a single defendant for the purposes of these false arrest/false imprisonment allegations.   See Docket Entry No. 5.

   **B.   Amended Complaint**

   Plaintiff's amended complaint ("Amended Complaint"), dated September 18, 2008, was received by the Clerk on September 29, 2008.   See Docket Entry No. 8.   The Amended Complaint includes some statements, which could be interpreted as suggesting that Plaintiff either failed to understand certain points explained to him in the Court's opinion dismissing the original Complaint, and other statements, which could be interpreted as Plaintiff's attempt to cure the deficiencies of the original Complaint.   This Court addresses these matters seriatim.

   **1.   Allegations Indicating Plaintiff's Confusion**

   Plaintiff's amended Complaint concludes with his "Statement of Claims," which asserts, inter alia, the following: (a) "Plaintiff is still incarcerated [due] to illegal evidence seized from a search warrant . . . ."; (b) "Plaintiff['s] freedom has been taken by malicious prosecution . . . ."; (c) "Plaintiff has sustained loss of freedom . . . ."; (d) "Plaintiff request[s] that his

4

release be granted immediately"; and (e) "Plaintiff has been
incarcerated for 2 years by arrest warrant . . . ." Docket Entry
No. 8, at 6-7. These claims unambiguously indicate that Plaintiff
is still aiming to utilize this civil action in order to: (1) be
released from his confinement; (2) assert malicious prosecution
claims; and (3) challenge the fact of his incarceration for the
period from his arrest to the current time. However, as the Court
already explained to Plaintiff is its previous opinion, Plaintiff
cannot seek release from imprisonment in a § 1983 action (since the
exclusive federal remedy for an inmate challenging the fact of his
confinement is a petition for a writ of habeas corpus), Plaintiff's
civil challenges to his ongoing criminal prosecution are barred by
the abstention doctrine, Plaintiff's malicious prosecution claims
are premature, and his false arrest/false imprisonment claims could
be raised solely with respect to the short period of incarceration
lasting from his arrest to the first legal action in his criminal
matter, e.g., his arraignment. See Docket Entry No. 5, at 12-16.
Therefore, all the above listed claims will be dismissed, once
again; **THIS DISMISSAL IS WITH PREJUDICE,** AND PLAINTIFF IS EXPRESSLY
DIRECTED **NOT TO RE-RAISE, IN THIS ACTION,** HIS REQUESTS FOR
IMMEDIATE RELEASE, OR HIS CHALLENGES TO HIS ONGOING CRIMINAL
PROCEEDINGS, OR HIS CLAIMS FOR MALICIOUS PROSECUTION, OR HIS
ALLEGATIONS CHALLENGING HIS POST-ARRAIGNMENT CONFINEMENT. If
Plaintiff disagrees with the Court's legal conclusions, Plaintiff's

remedy is an appeal of this Court's decision to the United States
Court of Appeals for the Third Circuit, rather than inclusion of
the claims dismissed with prejudice in Plaintiff's amended
pleadings.

### 2.   Other Allegations

Since Plaintiff's other allegations set forth in the Amended
Complaint are stated in a shuffled manner obstructing
comprehension, the Court finds it prudent to discuss the details of
these allegations jointly with the governing legal principles in
the "Discussion" Part of this Opinion, below.  It shall suffice, at
this point, to state that Plaintiff names a new batch of Defendants
(different from those named in his original Complaint) and sets
forth: (1) claims against "Chief John Doe Farrari"; (2) claims
against "Jane Doe, Howard Johnson Hotel Clerk"; (3) claims related
to a witness' testimony given during Plaintiff's grand jury
proceedings; (4) slander and libel claims; (5) claims related to a
search warrant executed through a search of Plaintiff's hotel room;
and (6) claims related to Plaintiff's arrest warrant. See Docket
Entry No. 8, at 2-4.  For the reasons stated below, all Plaintiff's
claims except those related to his search and arrest warrants will
be dismissed with prejudice, while Plaintiff's claims related to
the search and arrest warrants will be dismissed without prejudice,
and Plaintiff will be granted one final opportunity to "re-amend"
his pleading in accordance with the guidance provided below.

## II.  DISCUSSION

### A.  Standard of Review

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.  In determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). This Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions."

7

Id.  The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  The Court of Appeals guided as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' requires [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." [Bell Atl. Corp. v.] Twombly, 127 S. Ct. [195,] 1964-65 [(2007)].  Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3. . . . [In fact,] the Supreme Court [expressly] disavowed certain language that it had used many times before -- the "no set of facts" language from [a pre-Twombly case].  See id. at 1968.

Phillips, 515 F.3d at 230-32  (original brackets removed).

## B. **Claims Against Chief John Doe Farrari**

Plaintiff's allegations against "Chief John Doe Farrari, Clifton Chief of Police" read as follows:

> Has been notified both formally and informally in regard to the officer's denial of due process, racism and denial of rights in regard to [P]laintiff['s] arrest and processing of indictment.  Clifton's police actions were willful, malicious and an infringement upon [P]laintiff's due process guarantees.

Docket Entry No. 8, at 2.

These allegations unambiguously indicate that Plaintiff's claims against "Chief John Doe Farrari" are based solely on the theory of respondeat superior, since these allegations merely state

8

the fact that Chief John Doe Farrari was notified by Plaintiff about Plaintiff's opinion as to the circumstances of his arrest by Chief John Doe Farrari's subordinates. See id.; see also Docket Entry No. 5, at 9-11 (the Court's previous Opinion explaining to Plaintiff insufficiency of respondeat superior allegations). Plaintiff's allegations in no way suggest that Chief John Doe Farrari had any personal involvement in Plaintiff's arrest or that the circumstances of Plaintiff's arrest ensued from any official proclamations, policies or edicts promulgated by Chief John Doe Farrari. Consequently, Plaintiff's allegations against Chief John Doe Farrari will be dismissed without prejudice.

### C.  **Claims Against Jane Doe, Howard Johnson Hotel Clerk**

Plaintiff's allegations against "Jane Doe, Howard Johnson Hotel Clerk" read as follows:

> Hotel clerk upon my return to the Hotel.  I noticed my stuff was missing and she lied and told me that housecleaning removed it when in fact police of Clifton did. [The] search warrant clearly stated that a copy should have been left at premises, the clerk violated my 4th [A]mendment right by not giving me a copy of search warrant.  When Plaintiff called clerk supervisor that morning she told Plaintiff that the room was searched by police.

Docket Entry No. 8, at 4.

These allegations (seemingly based on the presumption that the police officers who conducted the search actually left a copy of the warrant with "Jane Doe, Howard Johnson Hotel Clerk") suffer of

9

two shortcomings: failure to meet the color of law requirement and failure to state a cognizable substantive claim.

### 1. Color of Law Requirement

Federal courts are courts of limited jurisdiction. <u>See</u> <u>Mansfield, C. & L. M. Ry. Co. v. Swan</u>, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." <u>Bender v. Williamsport Area School Dist.</u>, 475 U.S. 534, 541 (1986). A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority." U.S. Const. art. III., § 2; <u>see also</u> 28 U.S.C. § 1331.

Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights. <u>See</u> <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996); <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995). Specifically, Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

10

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Thus, to recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Groman, 47 F.3d at 633.

"The color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." Id. at 638.  The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982). For the conduct to be "fairly attributable" to the State, (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible, and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State. See id. at 936-39.

11

        The United States Supreme Court has articulated several instances where a private party's actions may be fairly attributed to state action, including when: (1) it results from the State's exercise of "coercive power"; (2) the State provides significant encouragement, either overt or covert; (3) a private actor operates as a willful participant in joint activity with the State or its agents; (4) a nominally private entity is controlled by an agency of the State; or (5) the private entity is entwined with governmental policies, or the government is entwined in its management or control. See Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2001) (internal quotations and citations omitted). The Court, in deciding whether a particular action or course of action by a private party is governmental in character, must examine: (1) the extent to which the actor relies on governmental assistance and benefits; (2) whether the actor is performing a traditional public function; and (3) whether the injury caused is aggravated in a unique way by the incidents of governmental authority. See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621 (1991).

        Here, Plaintiff's allegations could be construed, at best, as implying that the police officers who conducted search of Plaintiff's hotel room, actually left a copy of the search warrant with Jane Doe, Howard Johnson Hotel Clerk (rather than left a copy in the room or simply omitted to leave a copy). However, even if

this Court is to presume that Jane Doe, Howard Johnson Hotel Clerk, was actually left in physical possession of such copy, this fact would not transform her into a government agent obligated to execute service on Plaintiff: indeed, Plaintiff asserts that the language of the search warrant merely directed that a copy should be "left at premises." Docket Entry No. 8, at 4. Since nothing in this asserted language suggests that the copy should have been served upon Plaintiff by a government agent, the Court has no reason to presume that the searching officers delegated Jane Doe, Howard Johnson Hotel Clerk, as a government agent for the purposes of service of the warrant. Therefore, Plaintiff's allegations against Jane Doe, Howard Johnson Hotel Clerk, should be dismissed for failure to meet the color of law requirement.

### 2.   Failure to State a Cognizable Substantive Claim

In addition, Plaintiff's Fourth Amendment rights were not implicated by lack of service of the search warrant. As the Court already explained to Plaintiff, to state a Fourth Amendment claim, a plaintiff must allege two elements: (1) that there was a seizure; and (2) that the seizure was made without probable cause. See Docket Entry No. 5, at 16 (citing Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)). Presence of absence of probable cause is not affected by service of a warrant: errors as to the technicalities of the service do not rise to a violation of constitutional magnitude. See Walter v. United States, 447 U.S.

13

649, 657 n.10 (1980) (failure to serve warrant on owner of property does not make execution of warrant unlawful); <u>United States v. Marx</u>, 635 F.2d 436, 441 (5th Cir. 1981); <u>cf.</u> <u>United States v. Hector</u>, 474 F.3d 1150 (9th Cir. 2007); <u>English v. Armstrong</u>, 1997 U.S. Dist. LEXIS 17583 (S.D. Ala. Sept. 25, 1997). Therefore, Plaintiff's claims against Jane Doe, Howard Johnson Hotel Clerk, will be dismissed with prejudice.

**D.   Claims Based on Grand Jury Testimony**

Plaintiff's multiple claims against Defendant Detective Frank Loran ("Loran") include allegations that Loran, while testifying during Plaintiff's grand jury proceedings, lied to and misled the jurors. <u>See</u> Docket Entry No. 8, at 3. However, a witness testifying before a grand jury is immune from Section 1983 liability for the content of his/her testimony. <u>See</u> <u>Briscoe v. LaHue</u>, 460 U.S. 325, 329, 341-43 (1983); <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1467 (3d Cir. 1992); <u>Williams v. Hepting</u>, 844 F.2d 138, 143 (3d Cir. 1988). Therefore, Plaintiff's allegations against Loran based on the allegedly false testimony given during Plaintiff's grand jury proceedings will be dismissed with prejudice.

**E.   Claims Asserting Slander and Libel**

Scattered among Plaintiff's Amended Complaint allegations, there are statements suggesting that Loran provided Defendant Robert Rowan ("Rowan"), a spokesperson for the Clifton Police

Department, with information about Plaintiff's arrest on the charges underlying Plaintiff's current prosecution (which include sexual assault charges), and Rowan "relayed [this] information to media (newspaper and television outlets)," which "ruined [P]laintiff[']s good name and reputation and trust in his community"[1] and "classified [Plaintiff] as a [s]exual [p]redator." Docket Entry No. 8, 3-4.

Claims of slander and defamation are not cognizable under § 1983. Tort claims, such as defamation of character and slander, are not properly included in a civil rights action under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 332 (1986) ("We have previously rejected reasoning that 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States,'" quoting Paul v. Davis, 424 U.S. 693, 701(1976)); see also Hernandez v. Hunt, 1989 U.S. Dist. LEXIS 6806, 1989 WL 66634 (E.D. Pa. Jun 16, 1989). Because Plaintiff's claims of slander and defamation are not cognizable under § 1983, Plaintiff's remedy, generally, lies in state court.

Pursuant to 28 U.S.C. § 1367(c)(3), a District Court "may decline to exercise supplemental jurisdiction over a claim . . . if

---

[1] Plaintiff's Amended Complaint suggests that, prior to Plaintiff's arrest on the charges being currently prosecuted, Plaintiff already had either a criminal record or previous arrests. See Docket Entry No. 5, at 2 (discussing Plaintiff's photograph with a "criminal license plate").

. . . the district court has dismissed all claims over which it has original jurisdiction." Such a determination is discretionary and "[t]he general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised when there is no longer any basis for original jurisdiction." <u>Edlin Ltd. v. City of Jersey City</u>, 2008 U.S. Dist. LEXIS 41118, at *7 (D.N.J. May 23, 2008). Since, in this case, all of the federal claims are being dismissed either with or without prejudice, the Court should not reach, at this juncture, the issue of whether to exercise supplemental jurisdiction over the state law claims and should dismiss them without prejudice.

The Court, however, will dismiss Plaintiff's slander and libel claims *with* prejudice for the reason that these claims are time barred. The alleged slander and libel activity took place prior to July 1, 2006. <u>See</u> <u>McKinney v. Herald News</u>, 2008 U.S. Dist. LEXIS 81582, at *2 (D.N.J. Oct. 14, 2008) (addressing Plaintiff's previous claims against the Herald News, Channel 12 News, the Bergen Record newspaper, the North Jersey Media Group, Google, etc., which asserted that "[o]n or about July 1, 2006, [these media sources] published and circulated news articles and stories naming [Plaintiff] as a sexual predator"); <u>see</u> <u>also</u> <u>Rapist, 33, preyed on teen girls, police say; Ex-counselor charged in Hackensack, Clifton</u>, The Record, Bergen County, New Jersey at A01 (June 20, 2006) (discussing Plaintiff's arrest and charges of at

16

least four sexual assaults).   Here, Plaintiff's original Complaint was mailed on or after June 16, 2008, see Docket Entry No. 1-4, at 1 (dating Plaintiff's original submission made in the instant matter), that is, almost two years after the alleged defamation took place.   However, New Jersey statute of limitations for slander/libel actions is one year, see N.J. Stat. Ann. § 2A:14-3, (providing that "every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander").   Therefore, Plaintiff's state law claims were made at least one year after the period of limitations expired. These claims, consequently, are time barred and will be dismissed with prejudice.

**F.   Search Warrant Claims**

Plaintiff's search warrant claims, as stated in the Amended Complaint, are hard to piece together.   This Court surmised the following allegations:

According to the Amended Complaint, at 1:12 a.m., on a certain unspecified date, Defendant Sergeant Braken ("Braken") called Judge Rothstadt ("Judge") of the New Jersey Superior Court, requesting a search warrant for the purposes of searching the room Plaintiff was renting at a certain Howard Johnson hotel.   See Docket Entry No. 8, at 3-4.   During the conversation with the Judge, Braken allegedly, "informed the [J]udge that he interviewed an eyewitness [who was near] the place where the alleged [sexual assault] took place.

17

[Braken, allegedly, stated to the Judge that,] from his conversation with the [eye]witness {Braken] established probable cause [for search of Plaintiff's hotel room]." <u>Id.</u> at 3. According to the Amended Complaint, Braken also asserted to the Judge that issuance of a search warrant was necessary in light of exigent circumstances. <u>See id.</u> at 4. Consequently, the Judge authorized issuance of the requested search warrant, and the search of Plaintiff's hotel room took place in less than three hours, <u>i.e.</u>, at 4:15 a.m. <u>See id.</u> According to the Amended Complaint, Braken was aware that Plaintiff was not in his hotel room during the night at issue and Plaintiff, apparently, returned to the hotel when the search was already completed. <u>See id.</u> Allegedly, Defendants Detectives Kotora, Stine and Kaminski ("Detectives") executed the search warrant and seized certain evidence, on the basis of which Plaintiff is being currently prosecuted by the State. <u>See id.</u> at 4, 6.

Plaintiff's challenge to the search warrant appear to be three-pronged, <u>i.e.</u>, Plaintiff asserts that the warrant was invalid because: (1) the warrant "was never signed by a judge[,] only [Judge Rothstadt's] name was printed on [the] document"; (2) "[t]here were no exigency"; and (3) "[Braken] was lying under oath to the [J]udge." <u>Id.</u> at 3-4.

18

### 1.    Allegations Based on Lack of Signature

Allegations that the search was invalid because the Judge "never signed" the search warrant fails to state a claim both under the state law and constitutionally.  Pursuant to Rule 3:5-3, a "judge may issue a search warrant upon sworn oral testimony of an applicant who is not physically present" and, issuing such a warrant, "[t]he judge shall direct the applicant to print the judge's name on the warrant." See N.J. Court Rules, R. 3:5-3(b). Hence, the fact that the search warrant bore the Judge's name in print but not his signature did not render the warrant invalid even under the state law.

Moreover, for the purposes of Fourth Amendment challenges, the technicalities of a warrant are of no relevance.  See Sadlowski v. Benoit, 62 Fed. App'x 3 (1st Cir. 2003) (per curiam) (a search does not violate Fourth Amendment even where warrant, at time of search, was unsigned, did not contain one of plaintiffs' names as occupant of residence searched, and was different in format from one filed later with state court).

> The lack of a signature on the Served Warrant would not render the search unconstitutional.  See United States v. Lipford, 203 F.3d 259, 270 (4th Cir. 2000); United States v. Kelley, 140 F.3d 596, 602 n. 6 (5th Cir. 1998).  The Fourth Amendment does not require that a search warrant "name the person from whom the things will be seized." Zurcher v. Stanford Daily, 436 U.S. 547, 555 (1978). Plaintiffs' contention that the defendant did not comply with [a state law on warrants], prescribing the methods for issuance of a search warrant, is also insufficient to support a Fourth Amendment claim.  See White v. Olig, 56 F.3d 817, 820 (7th Cir. 1995).

Id. at 5.

As this Court already explained, to state a Fourth Amendment claim for an illegal seizure, a plaintiff must allege two elements: (1) that there was a seizure; and (2) that the seizure was made without probable cause. See Dowling, 855 F.2d at 141. The technicalities of state law, including the state law governing the execution of warrants, cannot impact the presence or absence of probable cause: probable cause is provided by the circumstances of the seizure, see Gerstein v. Pugh, 420 U.S. 103, 111 (1975); cf. Virginia v. Moore, 128 S. Ct. 1598 (2008), not by technicalities of the document.

**2.   Exigency Allegations**

For the same reason, Plaintiff's exigency allegations fail to state a Fourth Amendment claim, since the exigency inquiry cannot and does not substitute for that of probable cause. See N.J. Court Rules, R. 3:5-3(b) (discussing independently both inquiries, the probable cause one and that into the exigency of circumstances).[2]

---

[2]   The Court notes, in passing, Plaintiff's lack of logic as to his exigency claim.  According to the Amended Complaint, Plaintiff requested the management of the hotel where he was renting the room "to not let the cleaners in that room" since he kept certain contraband item in his room (these items are now being used as evidence in Plaintiff's current criminal prosecution). See Docket Entry No. 8, at 2, 4, 6.  Plaintiff, however, maintains that the police had no reason to seize these contraband items on an exigent basis because "[P]laintiff still had rights to the [hotel] room," i.e., Plaintiff was not yet checking out of the hotel and disposing of the contraband. Contrary to Plaintiff's conclusion that these circumstances indicated "clearly no exigency," id. at 4, the facts provided by

### 3.   Lack of Probable Cause Allegations

Thus, the sole cognizable Fourth Amendment challenges asserted by Plaintiff with respect to his search warrant appears to be those based on the alleged lack of probable cause.

However, Plaintiff's allegations appear to be self-contradictory, facts-wise.   On one hand, Plaintiff asserts that Braken acted on the basis of information obtained from an eyewitness of the assault(s).   <u>See</u> Docket entry No. 8, at 3.   On the other hand, Plaintiff asserts that "[Braken] was lying under oath to the [J]udge."   <u>Id.</u>   The paragraph following these allegations state Plaintiff's opinion that Braken violated Plaintiff's rights by failing to provide the Judge with information, which might had been beneficial to Plaintiff's cause. <u>See id.</u>  Plaintiff's statements made in this paragraph suggest that Plaintiff' allegation "[Braken] was lying under oath to the [J]udge" might be indicative of Plaintiff's opinion that Braken's statements given to the Judge were not as complete as Plaintiff would have preferred (<u>i.e.</u>, Braken's statements did not include certain information allegedly favorable to Plaintiff and allegedly known to police officers in other counties).

---

Plaintiff suggest that the police officers indeed had to act swiftly to seize the contraband before Plaintiff could return to the room and dispose of the evidence: it would be anomalous for the police officers to risk the opportunity to obtain the evidence by waiting for Plaintiff's checking out of the hotel.

If so, Plaintiff's allegations fail to state a claim.  As the Court already pointed out to Plaintiff, probable cause exists when the circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)).  Since "[p]robable cause . . . does not require that the officer have evidence to prove guilt beyond a reasonable doubt," Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995), the officer seeking arrest warrant need not account for every possible piece of alternative information existing: all (s)he has to do is state true information verifying probable cause.  Therefore, the account provided by Braken to the Judge did not have to incorporate every piece of information known to police officers who investigated Plaintiff's conduct in counties others than that of Braken's.

The Court, however, cannot rule out the possibility that Plaintiff' allegation "[Braken] was lying under oath to the [J]udge" was intended to indicate Plaintiff's opinion that Braken did not talk to the eyewitness at all, or that the eyewitness, during his conversation with Braken, did not provide Braken with the information Braken relayed to the Judge.  It is because of this possibility, the Court will allow Plaintiff one final opportunity

22

to re-amend his pleading and will dismiss Plaintiff's claims against Braken and the Detectives without prejudice.[3]

### G.  **Arrest Warrant Claims**

While understanding Plaintiff's allegations related to the search warrant presented was not an easy task, Plaintiff's assertions as to his arrest warrant offer an even bigger challenge.  The statements made in Plaintiff's Amended Complaint appear to suggest the following allegations:

On a certain unspecified date, Defendant "[Sergeant] John Doe [("John Doe")] signed . . . the oath and affirmation [entry of Plaintiff's arrest warrant, thus,] giving Det[ective] Frank Loran probable cause" to arrest Plaintiff.  Docket Entry No. 8, at 4. Defendant "Jane Doe (Court Reporter) [("Jane Doe")] signed the [arrest warrant next day.]  Jane Doe . . . had the duty to make sure the [E]xecutive [B]ranch did not do the job of the Judicial

---

[3]  In the event Plaintiff asserts, in his "re-amended complaint," that Braken misrepresented either the fact of his conversation with the eyewitness or the fact that the eyewitness, during his conversation with Braken, provide Braken with the information Braken relayed to the Judge, the Court will stay this action in accordance with the Supreme Court's guidance in Wallace v. Kato, 549 U.S. 384 (2007), in light of Plaintiff's unambiguous indication that the evidence obtained as a result of the search are now being used in Plaintiff's criminal prosecution, and this Court's ruling that Plaintiff's search warrant was invalid would invite the conclusion that the evidence being currently used in Plaintiff's criminal prosecution is "fruit of the poisonous tree" and Plaintiff's potential conviction is invalid.  See Wallace v. Kato, 549 U.S. 384 (Stevens, J., and Souter, J., concurring, and explaining that a civil matter shall be stayed until the criminal judgment is final).

Branch.  Jane Doe behavior of neglect for her judicial duty caused [P]laintiff['s] rights to be violated by way of false arrest and false imprisonment," id., because Loran "[a]rrested [P]laintiff with an illegal arrest warrant that was not signed by a Judicial Official such as Judge, Court Administrator, or Deputy Court Administrator."  Id. at 3.

In other words, Plaintiff seems to assert that, because the "name of the person administering oath" entry in Plaintiff's arrest warrant was signed by John Doe, Plaintiff's arrest by Loran on the basis of this warrant was a violation of Plaintiff's Fourth Amendment rights.  If Plaintiff aims to so assert, he fails to state a cognizable claim.  First, as this Court already noted, technical shortcomings of a warrant do not affect the validity of the warrant for the purposes of the Fourth Amendment analysis, since probable cause is not supplied by technicalities or a signature, rather it is supplied by existence of the factual circumstances warranting arrest.  See Moore, 128 S. Ct. 1598; Gerstein, 420 U.S. at 111; Sadlowski, 62 Fed. App'x at 5; Dowling, 855 F.2d at 141.

Moreover, Plaintiff errs in his belief that John Doe could not sign Plaintiff's arrest warrant as a person administering the oath to the complainant (who might or might have not been Loran): pursuant to Rule 3:2-1, "[a]ll complaints . . . shall be by certification or on oath before a judge or *other person authorized*

24

by *N.J.S.A. 2B:12-21 to take complaints*."  N.J. Court Rules, R. 3:2-1(a) (emphasis supplied).  Section 2B:12-21, in turn, clarifies that such "other person" could be "[a] police officer in charge of a police station, other than an officer who participated in the arrest of the defendant."  N.J. Stat. Ann. § 2B:12-21(b).  Thus, John Doe was entitled to act and sign the warrant as a the person administering oath for the purposes of Plaintiff's arrest executed by Loran on the basis of the warrant.  It follows that Plaintiff's allegations against Jane Doe also cannot state a claim, even under the state law, since Jane Doe correctly accepted the warrant for filing and, being a court administrator, correctly signed the warrant on behalf of the court.

Thus, Plaintiff's assertions that he was arrested without probable cause because his warrant was improperly signed by John Doe fail to state a claim upon which relief may be granted. Indeed, the information provided in Plaintiff's complaint strongly suggest that Plaintiff's arrest warrant was executed on the basis of evidence obtained as a result of search of Plaintiff's hotel room, see Docket Entry No. 8, at 3-4, 6 (indicating that, following the search, Plaintiff returned to his hotel room to find that a certain contraband was taken by the police and, at a certain later date, was arrested and has been in custody ever since on the grounds of charges based, either partly or fully, on the contraband

items seized).[4]  However, the Court cannot rule out the possibility that Plaintiff actually wished to allege that his arrest warrant was *not* based on factual circumstances that could provide probable cause.  The Court, therefore, will allow Plaintiff one final opportunity to re-amend his pleading by clarifying his claim and, therefore, will dismiss Plaintiff's arrest-warrant-related allegations against Loran and John Doe without prejudice.

## III. APPOINTMENT OF COUNSEL

The "Statement of Claims" section of Plaintiff's Amended Complaint states, as paragraph 8, the following: "Plaintiff is

---

[4] One of the newspapers which published an article about Plaintiff's arrest (based on the information allegedly related to media by Rowan and Loran) provided the following account:

> About 7 p.m., [Plaintiff] rented a room at a Howard Johnson hotel on Route 3 and [he and two teenage girls] began drinking.  [One girl] became "totally intoxicated," and [Plaintiff] asked the [other] teenager . . . to leave the room.  He then raped and committed other sexual acts on the girl who remained. . . .  The assault victim's parents brought her to PBI Regional Medical Center, where officials notified police.  After speaking with the two girls, Detective Sgt. Robert Bracken and Detective Frank Loran went to the hotel and found that [Plaintiff] had registered using his real name and address.  He was gone by then, but the detectives recovered bottles and other evidence from the room.  Unable to find him at home, they reached him using the cellphone number and ultimately persuaded him to surrender, Rowan said.

Rapist, 33, preyed on teen girls, police say; Ex-counselor charged in Hackensack, Clifton, The Record, Bergen County, New Jersey at A01 (June 20, 2006).

26

incarcerated and hereby request[s] that counsel be appointed."
Docket Entry No. 8, at 6.

Plaintiff appears to be confused about his right to counsel in
the instant matter.  Unlike in Plaintiff's currently undergoing
criminal proceedings, where Plaintiff's right to counsel is
guaranteed by the Sixth Amendment, see U.S. Const. am., VI ("In all
*criminal* prosecutions, the accused shall . . . to have the
Assistance of Counsel for his defense") (emphasis supplied),
Plaintiff has no right to have counsel appointed to him in a civil
matter, regardless of the fact that Plaintiff is currently
incarcerated.  See Tabron v. Grace, 6 F.3d 147, 153-54 (3d Cir.
1993), cert. denied, 510 U.S. 1196 (1994); Parham v. Johnson, 126
F.3d 454, 456-57 (3d Cir. 1997).

Pursuant to 28 U.S.C. § 1915(e), the Court may request that an
attorney represent an indigent plaintiff in a civil action.  The
power to grant appointment of counsel lies in the Court's
discretion.  See Tabron, 6 F.3d at 155.  Appointment of counsel
under 28 U.S.C. § 1915(e) may be made at any point during the
litigation and may be made by the Court sua sponte.  See id. at
156.

In evaluating an application for appointment of counsel, the
court must first consider the merits of the plaintiff's claim in
order to determine if it has "some arguable merit in fact and law."
Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).  If the

27

plaintiff's claim has arguable merit, then the court examines the following additional factors: (1) the plaintiff's ability to present his or her case; (2) the complexity of the legal issues presented; (3) the degree to which factual investigation is required and the ability of the plaintiff to pursue such investigation; (4) whether credibility determinations will play a significant role in the resolution of the plaintiff's claims; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can afford counsel on his or her own behalf. See id. at 155-157; Parham, 126 F.3d at 457-58.   Further, in determining whether to appoint counsel, the court must also consider "the lack of funding to pay appointed counsel, the limited supply of competent lawyers willing to do pro bono work, and the value of lawyers' time." Jenkins v. D'Amico, 2006 U.S. Dist. LEXIS 59102, at *1 (D.N.J. Aug. 22, 2006) (citing Tabron, 6 F.3d at 157-58).

Here, having two rounds of Plaintiff's pleading but still being unable to determine that Plaintiff's allegations state a single cognizable claim, the Court has no reason to appoint Plaintiff counsel.   Therefore, Plaintiff's application for appointment of counsel is denied without prejudice, as premature at the instant juncture.

IV.   **CONCLUSION**

For the reasons set forth above, Plaintiff's Amended Complaint will be dismissed.  The Court will deny Plaintiff's application for appointment of counsel without prejudice.

Plaintiff's claims against Defendants Braken, Kotora, Stine and Kaminski will be dismissed without prejudice.  Plaintiff's claims based on Plaintiff's arrest and raised against Defendants Loran and John Doe will similarly be dismissed without prejudice. Finally, Plaintiff's claims against Defendant Chief John Doe Farrari will also be dismissed without prejudice.  The remaining claims will be dismissed with prejudice.  Plaintiff will be allowed an opportunity to amend his pleading by re-stating his *allegations dismissed without prejudice*.  The Court stresses that this will be Plaintiff's last opportunity to amend his pleading in this matter.

PLAINTIFF IS EXPRESSLY ADVISED NOT TO RE-RAISE IN HIS "RE-AMENDED" COMPLAINT HIS REQUESTS FOR IMMEDIATE RELEASE, OR HIS CHALLENGES TO HIS ONGOING CRIMINAL PROCEEDINGS, OR HIS CLAIMS FOR MALICIOUS PROSECUTION, OR HIS ALLEGATIONS CHALLENGING HIS POST-ARRAIGNMENT CONFINEMENT, OR ANY OTHER CLAIM DISMISSED WITH PREJUDICE IN THE ORDER ACCOMPANYING EITHER THIS OR THE PREVIOUS COURT'S OPINION.  An appropriate Order accompanies this Opinion.

**PETER G. SHERIDAN**
**United States District Judge**

Dated: 1|14|09

29